UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURIE A. F.,

                Plaintiff,

v.                                        CASE NO. 1:24-cv-00464
                                        (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docs. 16, 20.) Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 16) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 20) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.  Procedural Background

On May 12, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of April 19, 2018.  (Tr. 178, 325-26.)  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 196, 216.)  She

then timely requested a hearing before an Administrative Law Judge (ALJ) and appeared with counsel for a telephonic hearing before ALJ Bryce Baird on August 30, 2022. (Tr. 148-76.) On February 6, 2023, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 13-33.) The Appeals Council denied her request for review, (Tr. 1-7), and Plaintiff timely filed her appeal to this Court.

### B. Factual Background[1]

Plaintiff was born on May 13, 1964, and alleged disability beginning on April 19, 2018. (Tr. 177-78.) Plaintiff had a high school education. (Tr. 159.) Her disabling conditions were initially alleged to include back injury, neck injury, asthma, anxiety, shoulder injury, and arthritis. (Tr. 178.) At the hearing, Plaintiff explained that she had a fusion of both her cervical and lumbar spine. (Tr. 155.) She did not testify to any mental impairments or resulting limitations.

Initially, the ALJ inquired as to the record support for disabling limitations resulting from Plaintiff's impairments, and Plaintiff's counsel indicated that "[m]uch of it would come from her subjective statements as well as the testimony from today." (Tr. 156.) The ALJ also sought to clarify the theory of disability in light of the fact that Plaintiff admitted she was able to "complete laundry, do personal laundry completely, travel independently, take her own medications, manage her own finances, maintain a house alone or with only occasional assistance, for example heavy work domestic help, plans, prepares, and serves adequate meals independently, takes care of all shopping needs independently." (Tr. 157.) Plaintiff's counsel indicated that those tasks took a significant amount of time to complete because Plaintiff required regular breaks. (*Id.*) Plaintiff explained that doing

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ. Other facts will be developed throughout the opinion as relevant to the Court's analysis.

a single load of laundry took all day due to the pain she experienced.  (Tr. 165-66.)  She similarly testified that she could clean her house, but she must take breaks between the tasks.  (Tr. 166.)  Plaintiff described that she was only able to sleep two to three hours per night and indicated that she napped during the day.  (Tr. 168.)  She further explained that she was able to walk for about fifteen minutes and could also drive.  (*Id.*)

### C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022. (Tr. 18.)

2. The claimant has not engaged in substantial gainful activity since April 19, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.). (Tr. 18)

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine status post fusion, degenerative disc disease of the cervical spine status post fusion, asthma, and insomnia (20 CFR 404.1520(c)). (Tr. 19.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 20.)

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and/or walk with normal breaks for a total of 4 hours in an 8 hour workday, can sit with normal breaks for a total of 6 hours in an 8 hour workday, she is limited to occasional climbing of ramps or stairs, no climbing of ladders, ropes or scaffolds, occasional balancing, occasional stooping, occasional kneeling, occasional crouching, and no crawling. She is limited to environments where there is no exposure to excessive cold, no concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation, no exposure to excessive vibration, and no exposure to hazards such as unprotected heights or moving machinery. She is limited to frequent reaching with the right dominant arm. (Tr. 21.)

6. The claimant is capable of performing past relevant work as a Collections Clerk and Secretary, both as actually performed and as generally performed, but is unable to perform the past relevant work of Auto Repair Estimator, either as actually performed or as generally performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). (Tr. 26.)

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 19, 2018, through the date of this decision (20 CFR 404.1520(f)). (Tr. 27.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.    Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff asserts two arguments in support of remand.  First, she contends that the ALJ erred in assessing her mental impairments and insomnia throughout his sequential analysis.  (*See* Doc. 16-1 at 17.)  Second, she argues that the ALJ erred by relying on stale opinions from non-examining agency psychologists.  (*See id.* at 26.)

### A.  The ALJ Properly Assessed Plaintiff's Mental Impairments and Insomnia Throughout his Analysis.

Plaintiff argues that the ALJ improperly evaluated her mental impairments by relying only on the evidence that supported his findings of none to mild limitations in the Paragraph B criteria.  (*See* Doc. 16-1 at 18-19.)  She also contends that he substituted his own analysis of Plaintiff's activities of daily living and participation during the hearing rather than relying on expert opinions.  (*See id.* at 21.)   Finally, Plaintiff argues that the ALJ failed to assess the combined impact of all Plaintiff's mental impairments when formulating the RFC.  (*See id.* at 22.)

A claimant's RFC is the most she can still do despite her limitations and is based on all relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).  The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo*, 31 F.4th at 78.  Indeed, an ALJ is permitted to "weigh all

of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). It is well-settled that, when formulating an RFC, an ALJ is permitted to accept or reject portions of medical opinions to the extent they are inconsistent with the record. *See April W. v. Comm'r of Soc. Sec.*, No. 1:24-cv-00044-MAV, 2024 WL 4804778, at *5 (W.D.N.Y. Nov. 14, 2024) (recognizing that an ALJ "is free to reject portions of medical-opinion evidence not supported by objective evidence") (quoting *Demeca P. v. Comm'r of Soc. Sec.*, No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024)).

However, "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding." *Michelle J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00306 CJS, 2023 WL 2623587, at *4 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source") (citations omitted). "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022). However, "an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." *Regina M. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06629 EAW, 2025 WL 899008, at *3 (W.D.N.Y. Mar. 25, 2025) (*quoting Lisa T. v. Kijakazi*,

No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022)) (quotations and citations omitted).

The ALJ concluded that Plaintiff's anxiety disorder and depressive disorder were non-severe impairments, supporting his conclusion with his analysis of the paragraph B criteria:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. The claimant reported that she has no problems with memory, and is able to manage her own medications and finances, and is able to drive a car (Ex. 5E/5, F21, 107, Hearing Testimony). Notations in the record indicate that the claimant had no difficulty with memory (Ex. 12F/4, 20F/71, 24F/3, 26F/6, 15, 28). At her psychological consultative examination she recalled 3 out of 3 objects immediately, and three out of three objects after a delay, she recited six digits forwards, and three in reverse, and her cognitive ability was noted to be average (Ex. 12F/4). Finally, when asked questions at the hearing, the claimant was able to recall information with no apparent difficulty. For these reasons, I find that the claimant has no limitation with understanding, remembering, or applying information.
>
> The next functional area is interacting with others. In this area, the claimant has no limitation. The claimant reported that she has no problems getting along with friends, family, or neighbors (Ex. 5E/5). Treating medical service providers described the claimant as conversant and cooperative, well groomed, and with good eye contact, end even described her mood as euthymic (Ex. 5F/81, 6F/38, 12F/3, 20F/38, 71, 89, 21F/20, 22F/5, 25F/3, 26F/36, 15, 28). Finally, the claimant was able to interact appropriately with the people present at the hearing. For these reasons, I find that the claimant has a [sic] no limitation in interacting with others.
>
> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has no limitation. The claimant reported difficulty concentrating for more than twenty minutes at a time (Ex. 5E, Hearing Testimony). She also reported that she "eventually" finishes tasks she has started, suggesting that completion of tasks takes her much longer than it used to (*Id.*). Notations in the record indicates that the claimant's concentration was intact and that she could perform simple one-step and two-step mathematical calculations and Serial 7's (Ex. 12F/4). She also reported that she is able to engage in activities of daily living that generally require an ability to concentrate and maintain attention such as preparing simple meals, shopping, using a computer, watching television, listening to the radio, and socializing with friends (Ex. 12F/4, 13F/2, Hearing

Testimony). Finally, the claimant was able to participate throughout the hearing for the duration of the hearing with no apparent difficulty. For these reasons, I find that the claimant has no limitation concentrating, persisting, or maintaining pace.

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant reported difficulty with some activities of daily living, such as preparing meals, which she reported take two to three times longer than it used to take (Ex. 5E). she also reported that she is not able to perform tasks such as yardwork and relies on her husband to do such tasks (*Id.*). Further, the claimant is able to manage the demands of many activities of daily living such as cooking, cleaning, laundry, shopping, and tending to personal care (Ex. 13F/2, Hearing Testimony). For these reasons, I find that the claimant has mild limitations in adapting or managing oneself.

(Tr. 19-20.)

The ALJ also addressed Plaintiff's insomnia:

Turning to the claimant's impairment of insomnia, the claimant reported difficulty falling asleep and staying asleep, even with medication (Ex. 12F/2-3, 14F/7, 19F/19, 25, 20F/53). She reported fatigue and trouble sleeping affected her day-to-day functioning and mood (Ex. 20F/70, 21F/9). A sleep study suggests possible sleep apnea (Ex. 5F/50). She was noted to be positive for insomnia and was assessed with insomnia (Ex. 14F/26, 21F/42). However, the objective record is not consistent with the claimant's allegations. First, the claimant reported sleeping "too much" at times (Ex. 20F/61). At other times, she denied sleep pattern disturbances or excessive daytime sleeping (Ex. 7F/9, 24F/3). Indeed, she reported improved sleep, and that she is able to fall back asleep better than before (Ex. 7F/126, 20F/88). At physical exams, neurological findings were generally unremarkable (Ex. 3F/16, 8F/18). Such evidence suggests that the claimant is not limited to the extent alleged by insomnia.

(Tr. 23-24.)

Having carefully reviewed the evidence, the Court finds ALJ Baird's analysis of

Plaintiff's mental impairments and insomnia[2] to be supported by substantial evidence.

---

[2] Plaintiff's sole argument regarding the ALJ's analysis of her insomnia is that the ALJ failed to explain how the RFC accommodated this impairment. (*See* Doc. 16-1 at 24.)  However, the ALJ plainly stated that he found the objective evidence inconsistent with Plaintiff's claimed impact on her functional abilities.  (*See* Tr. 23-24.)  And Plaintiff does not identify any evidence supporting specific functional limitations resulting from insomnia.  The Court finds no error.

The record generally reflects that Plaintiff engaged in rather conservative treatment, including medication and counseling. (*See* Tr. 127-47, 1029-34, 1235-1329, 1505-1534.) Notably, as of the alleged onset date, Plaintiff was not engaged in therapy, and she did not begin therapy until July 2021—more than three years after the alleged onset date. (*See* Tr. 1030) (referencing in February 2021 that Plaintiff was beginning an anti-anxiety medication and counseling); (Tr. 1289) (initial assessment by Endeavor Health Services in July 2021.  While the record does reflect that Plaintiff was hospitalized due to her mental impairments, the hospitalization occurred in 1990—almost thirty years before the relevant period.  (*See* Tr. 1290.)

Further, as rightly noted by the ALJ, although Plaintiff experienced depression and anxiety, the record does not contain any evidence that these conditions significantly limit her functional abilities—a requirement for an impairment to be found severe.  *See* 20 C.F.R. § 404.1520(c) (noting that an impairment must be "severe," which means it significantly limits an individual's ability to perform basic work activities).  In fact, Plaintiff acknowledges that she can independently perform activities of daily living, noting only that it may take her longer as a result of her physical limitations, which are not at issue in this case. (*See* Tr. 379-84.)  She also indicated she is able to follow instructions, engages in social situations, maintains relationships, and performs activities that require some level of concentration.  (*See* Tr. 382-83.)  Additionally, she notes that her routines constantly change, demonstrating some ability to adapt and manage herself.  (*See* Tr. 384.)

Moreover, the record reflects relatively unremarkable mental health examinations and positive engagement and interaction with her providers. Her objective mental

examinations consistently describe Plaintiff as alert, fully oriented, generally normal (or even euthymic) mood, normal effect, kind demeanor, cooperative, appropriate interactive skills, adequate memory, no suicidal or homicidal ideations, and good judgment.  (*See, e.g.,* Tr. 128, 131, 140, 1000, 1302-05, 1430, 1501-02, 1516-17, 1658.)

The Court disagrees with Plaintiff's contention that the ALJ failed to consider evidence favorable to Plaintiff.   While Plaintiff relies on evidence reflecting suicidal ideation and significant periods of exacerbated anxiety and depression, the Court notes this evidence is limited to certain situational stressors and occurred primarily either before or early in her mental health therapy.  For example, in the early period following her last car accident, Plaintiff had severe anxiety related to driving a car.  (*See* Tr. 778) (reporting that Plaintiff had "increased anxiety, panicking, and vomiting when trying to drive her old car"); (*see* Tr. 929) (Plaintiff reported an increase in depression and anxiety following her last car accident and would not get into cars until her husband helped her through it).  However, in her counseling records at Endeavor Health Services, there is no mention of any anxiety related to driving a car.   Instead, Plaintiff's anxiety and depression therapy during this period primarily centered around her relationships with her family members or her significant other. (*See, e.g.,* Tr. 128, 140, 142, 146, 1247, 1275, 1277, 1279, 1283, 1285, 1324, 1326, 1506, 1511, 1532.)  These records also recognize anxiety following her move from Colorado and getting established in a new state while living with a difficult family member. (*See, e.g.,* Tr. 1322.)   Situational stress does not generally support a finding of disability. *See Deborah R. v. Kijakazi*, No. 20-CV-1235F, 2022 WL 34458, at *4 (W.D.N.Y. Jan. 4, 2022) (recognizing that "deficits in mental health brought upon by

situational stress are not necessarily disabling.") (internal citations and quotations omitted).

More importantly, the record reflects that Plaintiff's conditions improved throughout her counseling.  Indeed, her scores on the diagnostic testing reflected improvement after beginning therapy.  (*See* Tr. 1049-50) (reflecting a score on the PHQ-9 of 25 in January 2021); (Tr. 1051) (reflecting a GAD-7 score of 18 in early 2021); (Tr. 1283) (reflecting a score of 5 on the PHQ-9 and a 6 on the GAD-7 in November 2021).  And in August 2022, Plaintiff even reported she "believe[d] she could begin the process of closing out treatment."  (*See* Tr. 1532.) Moreover, throughout 2022, as noted above, her mental health evaluations were stable and she did not reflect suicidal ideation. (*See, e.g.,* Tr. 1505-06, 1510-11,1513-14, 1516-17,1519-20,1532.)

Additionally, the Court finds that the ALJ did not improperly substitute his judgment for that of the medical experts. There can be no dispute that it is entirely appropriate for an ALJ to consider Plaintiff's activities of daily living and hearing testimony in formulating an RFC. While Plaintiff argues that this evaluation ignores the opinions of "treating and examining specialists, all of whom clearly perceived some level of impairment in these areas," (*see* Doc. 16-1 at 21), Plaintiff does not identify which opinions she contends supports any greater limitation in her alleged mental impairments.  To the contrary, the agency reviewers concluded that Plaintiff's mental impairments were non-severe, finding only a mild limitation in adapting or managing oneself.  (*See* Tr. 187, 207.)

Furthermore, while Dr. Santarpia found a "mild to moderate impairment" in "regulating emotions, controlling behavior, and maintaining well-being," she also acknowledged that Plaintiff's difficulties were "caused by stressors" and found that her

mental impairments were not "significant enough to interfere with [Plaintiff's] ability to function on a daily basis." (*See* Tr. 1032-33.) As the ALJ rightly recognized, the whole of the record does not contain evidence supporting any limitations on Plaintiff's ability to regulate emotions, control behavior, or maintain her own well-being. (*See* Tr. 26.) Nor does Plaintiff point to any specific evidence suggesting otherwise. To the extent that Dr. Santarpia's opinion can be viewed as conflicting with the ALJ's conclusion, the ALJ is permitted to reject portions of medical opinions that are inconsistent with the record as a whole. *See April W.*, 2024 WL 4804778, at *5. Nonetheless, there is no medical opinion, including Dr. Santarpia's, which concludes that Plaintiff's mental impairments impact her ability to function, or which sets forth specific functional abilities that are limited by Plaintiff's mental conditions.

For this same reason, the ALJ's decision not to include any restrictions pertaining to Plaintiff's mental impairments was proper. The ALJ found three of the four relevant functional areas to be without limitation, eliminating any requirement for additional discussion at step four. *See Annette A. v. Comm'r of Soc. Sec.*, Case no. 23-cv-6087-FPG, 2024 WL 2956906, at *3 (June 12, 2024) (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 n.3 (10th Cir. 2013)) (noting that a finding of "none" in a functional area "obviate[s] the need for further analysis at step four," since the impairment necessarily "pose[s] no restriction on the claimant's work activities"). And the ALJ found that Plaintiff was only mildly limited in the fourth functional area, and a mild limitation in only one functional category at step two "does not necessarily imply a corresponding limitation in a claimant's RFC." *See Janine T. v. Comm'r of Soc. Sec.*, No. 23-cv-384, 2024 WL 1678128, at *3 (W.D.N.Y. Apr. 18, 2024) (rejecting the theory that "because the ALJ found, at step two,

that Plaintiff was mildly limited in her abilities to interact with others and concentrate and maintain pace, the ALJ was required to include some limitation related to her depression in the RFC.") *See also Kendra C. v. Comm'r of Soc. Sec.*, No. 21-CV-1131MWP, 2024 WL 1242413, at *10 (W.D.N.Y. Mar. 22, 2024) (recognizing that "if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not necessarily err by formulating an RFC without mental limitations or restrictions"); *Grace M. v. Comm'r of Soc. Sec.*, No. 20-CV-1023SR, 2022 WL 912946, at *3 (W.D.N.Y. Mar. 29, 2022) (noting that "even though mild limitations may cause functional restrictions, such limitations do not compel the inclusion of mental limitations in the RFC"). And as noted above, the record does not contain, nor does Plaintiff identify, specific functional abilities limited by Plaintiff's mental impairments. Although Plaintiff contends that the ALJ failed to consider these non-severe mental impairments in his RFC, the above analysis suggests otherwise,[3] and it is well-settled that an ALJ's failure to identify every piece of evidence does not mean it was not considered in his analysis. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Moreover, the burden to show the necessity of a more restrictive RFC is on Plaintiff, and Plaintiff has

---

[3] As discussed throughout this section, the Court is able to glean the ALJ's rationale in evaluating Plaintiff's mental impairments and their relation to the resulting RFC. While Plaintiff takes issue with the clarity of his analysis, the Court notes the ALJ specifically indicated in the conclusion of his step two analysis that "[t]he following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 20.) The Court does not agree that the ALJ should repeat his thorough analysis of Plaintiff's mental impairments in his RFC analysis when he otherwise concludes there are no functional impacts resulting from these impairments. *See Cynthia M. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00955-CJS, 2024 WL 4289537, at *8 (W.D.N.Y. Sept. 25, 2024) (concluding that "the ALJ's failure to expressly discuss Plaintiff's mild mental impairments in the RFC discussion does not require remand, since the ALJ's reasons for not including additional limitations in the RFC finding are apparent from the decision as a whole, and, in particular, from his discussion at step three of the sequential evaluation.") (citing *Donna L. v. Comm'r of Soc. Sec.*, 5:23-CV-0655 (GTS/TWD), 2024 WL 3738067 (N.D.N.Y. Aug. 9, 2024)).

not carried her burden.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (recognizing that the plaintiff has the burden to prove a more restrictive RFC).

Plaintiff's reliance on *Novas v. Kijakazi* is misplaced.  No. 22-cv-1020 (MKV)(BCM), 2023 WL 2614362, at *1 (S.D.N.Y. Mar. 8, 2023), *report and recommendation adopted by Novas v. Comm'r of Soc. Sec.*, 2023 WL 2613550, (S.D.N.Y. Mar. 23, 2023).  In that case, the ALJ found mild limitations in each area of mental functioning, and the record contained evidence suggesting specific limitations resulting from the plaintiff's mental impairments that may have prevented the plaintiff from performing her prior work. *See id.* at *13.  In light of this evidence and the absence of any exchange between the ALJ and the vocational expert regarding the impact of these supported mental limitations, that court recommended remand. *See id.*

In sum, while Plaintiff generally takes issue with the ALJ's analysis, and points the Court to other facts she contends supports an alternative conclusion, those facts create at most a conflict within the evidence, which is to be resolved by the ALJ.  *Veino*, 312 F.3d at 588.  And, once resolved by the ALJ, it cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise*."  *Brault*, 683 F.3d at 448 (emphasis in original) (citation omitted).  The Court is plainly prohibited from re-weighing the evidence as Plaintiff requests.  *See also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.").  Simply put, Plaintiff's disagreement with the ALJ's resolution of conflicting evidence is not grounds for remand.  *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023

WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.").

### B.  The ALJ Properly Evaluated the Medical Opinions.

Plaintiff makes two arguments regarding the ALJ's evaluation of the medical opinions. First, she seems to argue that the ALJ erred in finding the agency reviewer opinions more persuasive than the opinion by examining consultative psychiatrist Dr. Santarpia.  (*See* Doc. 16-1 at 26.)  Plaintiff contends that Dr. Santarpia's opinion is entitled to more weight because she examined Plaintiff, and the ALJ wrongly discounted the opinion by substituting his lay judgment in place of Dr. Santarpia's.  (*See id.*)  Next, Plaintiff maintains that the ALJ further erred by relying on the agency reviewer opinions which were stale because the record did not yet reflect any psychiatric diagnosis or contain any treatment records.  (*See id.* at 27.)

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability

and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

To be sure, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). While a medical opinion is not necessarily stale based on its age, it may be stale if it does not account for a plaintiff's deteriorating condition. *See Samantha T. v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-139 (JGW), 2024 WL 4582825, at *5 (W.D.N.Y. Oct. 25, 2024) (internal citations omitted). That said, "[a] more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Anthony F. v. Comm'r of Soc. Sec.*, Case No. 23-cv-33-FPG, 2023 WL 7294874, at *4 (W.D.N.Y. Nov. 6, 2023) (internal quotation omitted). "Where the submitted evidence did not directly contradict a doctor's opined limitations, and further, the ALJ analyzed the recent evidence, the doctor's opinion was not impermissibly stale." *Robin H. v. Comm'r of Soc. Sec.*, No. 1:21-CV-507-DB, 2023 WL 3645489, at *13 (W.D.N.Y. May 25, 2023). Plaintiff bears the burden of showing that her condition deteriorated after the medical opinions were provided. *See Christopher C. v. Comm'r Soc. Sec.*, Case No. 20-cv-1774, 2022 WL 16797970, at *4 (W.D.N.Y. Nov. 8, 2022) (citing *Vincent B. v. Comm'r of Soc. Sec.*, 561 F. Supp. 3d 362, 367 (W.D.N.Y. 2021)).

The ALJ carefully evaluated the expert evidence pertaining to Plaintiff's alleged mental impairments:

> The claimant's medical records were reviewed by O. Fassler, Ph.D., in May 2021, and L. Dekeon, Ph.D., in August 2021, both of whom stated that the claimant has mild limitations in adapting and managing herself, but no limitations in any other area of mental functioning (Ex. 1A, 3A). The prior

administrative medical findings of Drs. Fassler and Dekeon are consistent with objective record. First, although the claimant did report that she does not handle stress well, she did report that her routines are constantly changing, which suggests an ability to adapt and manage situations (Ex. 5E/7). Indeed, notations in the record indicate that the claimant had no difficulty with memory (Ex. 12F/4, 20F/71, 24F/3, 26F/6, 15, 28). Next, treating medical service providers described the claimant as conversant and cooperative, well groomed, and with good eye contact, end [sic] even described her mood as euthymic (Ex. 5F/81, 6F/38, 12F/3, 20F/38, 71, 89, 21F/20, 22F/5, 25F/3, 26F/36, 15, 28). Further, she also reported that she is able to engage in activities of daily living that generally require an ability to concentrate and maintain attention such as preparing simple meals, shopping, using a computer, watching television, listening to the radio, and socializing with friends (Ex. 12F/4, 13F/2, Hearing Testimony). Such evidence is consistent with and suggestive of non-severe mental impairments. Drs. Fassler and Dekeon supported the prior administrative medical findings with a review of the evidence available to [them at] that time as well as a narrative explaining the prior administrative medical findings and providing references to the objective record. Overall, I find the prior administrative medical findings of Drs. Fassler and Dekeon are persuasive.

Consultative examiner Susan Santarpia, Ph.D., opined on the claimant's physical [sic] functioning following an in-person evaluation performed in February 2021 (Ex. 12F). Dr. Santarpia opined that the claimant has mild to moderate impairments in regulating emotions, controlling behavior, and maintaining well-being (Ex. 12F/4-5). The opinion of Dr. Santarpia is not consistent with the objective record because the medical evidence of record does not suggest limitations in regulating emotions or behaviors. For example, although the claimant did report that she does not handle stress well, she did report that her routines are constantly changing, which suggests an ability to adapt and manage situations (Ex. 5E/7). Indeed, the record contains a general lack of evidence that would indicate that the claimant had difficulty regulating emotions or behaviors. The claimant reported that she has no problems getting along with friends, family, or neighbors (Ex. 5E/5). Treating medical service providers described the claimant as conversant and cooperative, well groomed, and with good eye contact, end [sic] even described her mood as euthymic (Ex. 5F/81, 6F/38, 12F/3, 20F/38, 71, 89, 21F/20, 22F/5, 25F/3, 26F/36, 15, 28). Such evidence suggests that different limitations than those stated by Dr. Santarpia. The statements are supported by the findings and conclusions of Dr. Santarpia following in-person evaluation, as well as narrative explaining the findings. Nonetheless, this was a one-time exam. Overall, I find the opinion of Dr. Santarpia is not persuasive.

(Tr. 25-26.)

The Court does not find Plaintiff's argument to be well-taken. First, the ALJ adequately detailed the reasoning supporting his conclusions, including the factors of supportability and consistency. As set forth in his analysis, the ALJ found the objective medical evidence and Plaintiff's engagement in activities of daily living consistent with the agency reviewer opinions. (Tr. 25-26.) The ALJ also concluded that Dr. Santarpia's opinion regarding Plaintiff's ability to regulate emotions, control her behavior, and manage her well-being was not supported by the record based on Plaintiff's ability to maintain relationships, positively engage with her providers, and manage constantly changing routines. (*See* Tr. 26.) While the ALJ recognized that Dr. Santarpia's opinion was supported by her in-person evaluation, he correctly considered it in light of the record as a whole—which did not support her assignment of a mild to moderate limitation in this functional area. (*See id.*)

Further, while Plaintiff contends that the ALJ should have afforded more weight to Dr. Santarpia's opinion, the Court disagrees. First, the plethora of caselaw cited by Plaintiff for this proposition relates to treating providers with established relationships with the plaintiff—not a one-time examining provider. (*See* Doc. 16-1 at 27-29.) And it is well-settled that state agency reviewer's opinion can serve as substantial evidence to support an ALJ's finding when that opinion is consistent with the record as a whole. *See Frye ex rel. A.O. v. Astrue,* 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State Agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

Additionally, the Court does not agree that the agency reviewer opinions are stale. As a threshold matter, the mere fact the opinions were rendered before certain evidence

was received does not automatically invalidate the opinions. Indeed, "the Second Circuit has affirmed that an ALJ is entitled to assign great weight to the opinion of a state agency consultant who has not reviewed the entire longitudinal record, so long as the subsequent treatment notes and opinion evidence does not differ materially from the evidence reviewed by the consultant." *Stephani G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00435, 2024 WL 493501, at \*3 (W.D.N.Y. Feb. 7, 2024); *see also Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016). Here, the ALJ analyzed the entire record, including the evidence received after the agency reviewer opinions, and Plaintiff has not identified any subsequent evidence that is inconsistent with the agency reviewer opinions. Notably, Dr. Santarpia's opinion, which Plaintiff advocates was deserving of more weight, was rendered before the agency reviewer opinions, and was expressly considered by the reviewers.

For these reasons, the Court finds no error in the ALJ's evaluation of the medical opinions.

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 16) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 20) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.


Dated: January 12, 2026                    J. Gregory Wehrman
Rochester, New York                        HON. J. Gregory Wehrman
                                           United States Magistrate Judge